| | |
|---|---|
| District Court, Broomfield County, Colorado<br>17 Descombes Drive<br>Broomfield, CO 80020<br>Phone: (720) 887-2100 | DATE FILED: January 26, 2018 1:22 PM<br>FILING ID: AC415147D2C20<br>CASE NUMBER: 2018CV30022 |
| **EMILY REITH,**<br>Plaintiff<br><br>vs.<br><br>**SAFECO INSURANCE COMPANY OF AMERICA d/b/a SAFECO INSURANCE, A LIBERTY MUTUAL COMPANY, a Foreign Corporation,**<br>Defendant. | ↑   Court Use Only   ↑ |
| Cannon Hadfield Stieben & Doutt, LLC<br>Shannon B. Sharrock, #36969   sbs@cannonlaw.com<br>3534 JFK Pkwy. #B<br>Fort Collins, CO 80525<br>Telephone: (970) 689-3037<br>Fax: +1 (970) 360-1004 | Case No.<br><br><br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

COMES NOW the Plaintiff, Emily Reith, by and through undersigned counsel, Cannon Hadfield Steiben & Doutt, LLC, Shannon B. Sharrock appearing, and for her Complaint against the above-named Defendant, Safeco Insurance Company of America d/b/a Safeco Insurance, a Liberty Mutual Company ("Safeco"), and states and alleges as follows:

## Parties

Plaintiff Emily Reith is a private individual and resident of Broomfield County, with a mailing address of 1600 Abilene Drive, Broomfield, CO 80020 ("premises").

1. Defendant Safeco is an insurance company with its principal place of business in New Hampshire. Safeco is duly authorized and licensed to conduct business as an insurance company

1

Exhibit A

in the State of Colorado and has at all times relevant to the allegations of the Complaint transacted business in the State of Colorado.

2. Jurisdiction is appropriate in this Court pursuant to C.R.S. § 13-1-124.

3. Venue is appropriate in this Court pursuant to Colorado Rules of Civil Procedure 98(c).

### General Allegations

4. At all times material to the allegations of the Complaint, Ms. Reith was an insured homeowner under a policy issued to her by Safeco for the premises with coverage limits for dwelling of at least $237,400.00, to include $10,000 coverage for mold and fungi removal and remediation and $10,000 coverage for escape of water.

5. On September 24, 2017, Ms. Reith noted a problem with her hot water supply and scheduled a plumbing service to trouble-shoot the supply issue on September 27, 2017.

6. On September 27, 2017, the plumbing service hired by Ms. Reith discovered that a nail had punctured a hot water pipe located in Ms. Reith's crawl space below her main floor causing an acute spray and accumulation of hot water and steam into the enclosed crawlspace.

7. On September 27, 2017, upon discovery of the damaged pipe and resultant water accumulation, Ms. Reith called Safeco and submitted a claim over the telephone to Safeco. Ms. Reith was advised by the Safeco representative that Safeco would send an adjustor and water mitigation team to the premises.

8. Ms. Reith's policy provided for coverage for escape of water as follows:

**ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR DRAIN ON THE RESIDENCE PREMISES (BUILDING AND CONTENTS) [$10,000]:**

**2. EXTENSION OF COVERAGE**

> **For an additional premium, we cover accidental direct physical loss to property covered under Section I – Property Coverages caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the residence premises…**

9. Ms. Reith's policy provided for coverage for water damage as follows:

> **If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance.**

10. Ms. Reith relied on Safeco's representative's representation that a water mitigation team would arrive on the premises and relied on the inference that the water mitigation team would remove the water.

11. On September 28, 2017, Safeco sent a a water mitigation team to the premises to evaluate the damage. Said water mitigation team refused to start water extraction until approval of the claim.

12. On September 29, 2017, Safeco sent an adjustor to the premises. The adjustor made a cursory inspection of the crawlspace and at once concluded there was no coverage.

13. Also on September 29, 2017, Ms. Reith's claim was assigned to Safeco adjustor Ahmad Kasem.

14. Because Safeco's field adjustor outright denied coverage, Ms. Reith scrambled to find and hire a restoration company, which arrived for emergency water mitigation on the premises on September 30, 2017 to remove approximately several hundred gallons of water from the enclosed crawlspace, at a cost of almost $19,500.00.

15. On or about September 29, 2017, Mr. Kasam advised Ms. Reith over the telephone that the claim was denied because it was a condition that had occurred over weeks, months or years and that such a condition was excluded under the terms of the homeowner's policy.

16. During its water remediation and removal from September 30, 2017 to October 16, 2017, the emergency restoration company discovered and had to remediate mold growth.

17. Ms. Reith's policy provided for coverage for mold removal and remediation as follows:

> **ADDITIONAL PROPERTY COVERAGES: 10. … We will pay up to the amount stated in your Policy Declarations [$10,000] for:**
>
> **a.  the direct physical loss to covered property caused by fungi, wet or dry rot, or bacteria;**
>
> **b.  the cost to remove fungi, wet or dry rot, or bacteria from covered property;**
>
> **c.  the cost to tear out and replace any part of the building or other covered property as needed to gain access to the fungi, wet or dry rot, or bacteria…**

18. Additionally, the emergency restoration company could not dry out the kitchen floors above the damaged crawlspace and so removed the kitchen floors only to discover asbestos, requiring Ms. Reith to remove the kitchen base cabinets in preparation for the asbestos abatement as required under state and local law, including but not limited to C.R.S. § 25-7-501, et seq.

19. Ms. Reith's policy provided for coverage of $23,740.00 for asbestos abatement in compliance with said law. In pertinent part, the policy states:

> **Building Ordinance or Law Coverage. We will pay for damage to Building Property We Cover resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property… You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.**

20. Ms. Reith then hired an asbestos remediation team and spent an additional $4,418.00 on asbestos removal. Ms. Reith will incur additional damages to repair and replace those floors and renovate the kitchen now in disrepair.

21. On October 2, 2017, Ms. Reith spoke with Mr. Kasam and asked him if she could appeal the denial of claim to which he responded that she needed to submit a letter from the emergency restoration company verifying that the claim was a covered loss.

22. Thereafter, from October 2, 2017 to October 25, 2017, Ms. Reith tried but failed to speak with Mr. Kasam by leaving numerous voicemails for Mr. Kasam, and then for his supervisor. On these voicemails, Ms. Reith requested information on the verbal denial and advised them she intended to supplement the claim with invoices, a letter from the emergency restoration company, and additional information.

23. On or about October 25, 2017, adjustor John Downing from Safeco and Liberty called Ms. Reith to discuss the claim and represented he was the new adjustor on the file. He reiterated that the determination to deny the claim was because the condition had occurred over weeks, months or years.

24. On October 25, 2017, Ms. Reith followed up with Mr. Downing via email with water bills for the summer months and water use calculations showing that the condition was a recent condition. Ms. Reith also attached an October 20, 2017 Letter of Certification from the emergency restoration company verifying that the underlying condition was a recent, covered loss and setting forth evidence for that conclusion.

25. On October 26, 2017, Ms. Reith sent a series of follow up emails to Mr. Downing with the asbestos abatement invoice and the emergency restoration company's invoice. Ms. Reith

advised Mr. Downing in those emails that she had no functional kitchen and had to take out a home equity loan to pay the invoices, which were still outstanding.

26.     On October 26, 2017, Ms. Reith spoke with Mr. Downing regarding water usage as shown in the water bill submitted to him on October 25, 2017. Ms. Reith pointed out that the water usage was the result of sprinkler usage, and thereafter went to Home Depot to get copies of receipts showing her purchase of sprinklers in relation to the usage reflected in the water bill. Ms. Reith supplied those receipts from Home Depot to Mr. Downing that same day.

27.     On October 30, 2017, Mr. Downing sent to Ms. Reith an email with an attached denial of claim letter from Safeco, citing as the basis for its denial a finding that the underlying condition was present over weeks, months or years. That denial of claim letter was dated October 3, 2017.

28.     At all times relevant to this Complaint, Mr. Downing's email signature block identified him as a "Catastrophe Inside Claims Specialist I" for Liberty Mutual Insurance. Under his signature block, the company logos for Liberty and Safeco were displayed.

29.     On November 13, 2017, counsel for Ms. Reith sent correspondence to Mr. Downing requesting all information which Safeco considered when denying Ms. Reith's claim on October 3, 2017.

30.     On November 14, 2017, in response to counsel's November 13, 2017 request, Mr. Kasem sent email correspondence to counsel with three attachments: A photo purportedly prepared on September 29, 2017; the October 3, 2017 denial of claim letter; and a certified copy of Ms. Reith's homeowner's policy.

31. Via email response and still on November 14, 2017, counsel requested confirmation from Mr. Kasem that the three attachments identified in paragraph 30, above, were all the information Safeco considered when denying Ms. Reith's claim.

32. On November 14, 2017, Mr. Kasem, via email response to counsel's request for confirmation, advised counsel that "the documents we included in our previous email is all current documentation that I am able to share with you at this time."

33. At all times relevant to this Complaint, Mr. Kasem's email signature block identified him as a "Catastrophe Inside Claims Specialist I" for Liberty Mutual Insurance. Under his signature block, the company logos for Liberty and Safeco were displayed.

34. Upon information and belief, Liberty is parent company to Safeco.

35. Upon information and belief, Liberty was involved in the denial of Ms. Reith's claims.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract for Payment of Homeowner's Insurance Benefits)**

36. Ms. Reith repeats and repleads the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. The insurance contract between Safeco and Ms. Reith provides homeowner's coverage benefits.

38. Pursuant to the terms of the homeowner's policy issued by Safeco, Ms. Reith is entitled to coverage under her homeowner's policy benefits.

39. Ms. Reith made a demand for coverage pursuant to Safeco's policy for the damages to the premises as a result of the acute hot water spurt discovered on September 27, 2017.

40. Thereafter, Safeco verbally denied the claim on September 29, 2017 and reduced that denial to writing on October 3, 2017.

41.     By admission, Safeco considered no new information, including but not limited to the October 20, 2017 Letter of Certification from the emergency remediation company, water usage calculations, water bills, or evidence of sprinkler usage in affirming denial of coverage on October 30, 2017.

42.     Safeco wrongly refused to cover Ms. Reith for water damage, mold remediation, water removal, and asbestos removal and remediation covered under the terms of her homeowner's policy.

43.     Safeco has breached its contract with Ms. Reith.

44.     As a result of this breach of contract, Ms. Reith has sustained damages.

## SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1))

45.     Ms. Reith repeats and repleads the allegations of paragraphs 1 through 44 as if fully set forth herein.

46.     C.R.S. § 10-3-1115(1)(a) provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."

47.     Ms. Reith, as a named insured on Safeco's policy, is a first-party claimant.

48.     As set forth in more detail above, despite knowing of the nature and extent of Ms. Reith's damages, Safeco has yet to offer anything to Ms. Reith from the coverage available to her under the homeowner's policy.

49.     Safeco's position that the underlying acute spurting hot water pipe was present for weeks, months and years is contrary to law, the evidence provided to Safeco and Liberty adjustors, and unreasonable.

50.     Safeco's denial of Ms. Reith's claim for coverage under her homeowner's policy is unreasonable.

51.     Safeco knew, or should have known, that its conduct was unreasonable and/or recklessly disregarded the fact that its conduct was unreasonable.

52.     Pursuant to C.R.S. § 10-3-1116(1), Ms. Reith is entitled to reasonable attorney's fees, pre- and post-judgment interest, and two times the covered benefit.

## THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of an Insurance Contract)

53.     Ms. Reith repeats and repleads the allegations of paragraphs 1 through 52 as if fully set forth herein.

54.     As a provider of insurance services to the public, Safeco had a duty to act in good faith and fair dealing at all times, to abstain from deceptive or misleading practices, and to keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

55.     Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith and deal fairly with their insureds.

56.     Pursuant to their implied duty of good faith and fair dealing, Safeco owes Ms. Reith an obligation to treat her interest with equal consideration to its own interest.

57. Safeco breached its duty of good faith and fair dealing owed to Ms. Reith in, but not limited to, the following respects:

   a) Failing to give equal consideration to the interests of Ms. Reith, its insured;

   b) When investigating Ms. Reith's claims, failing to diligently search for evidence which supported its insured's (Ms. Reith's) claims;

   c) Seeking to discover only evidence that defeated its insured's (Ms. Reith's) claims;

   d) Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard of lack of reasonable basis for delaying and/or withholding benefits;

   e) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

   f) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   g) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear;

   h) Compelling Ms. Reith to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Ms. Reith is entitled to recover;

   i) Forcing Ms. Reith into the costly and lengthy process of litigation; and

   j) Any further acts which may be discovered.

58. Safeco's aforesaid conduct was unreasonable and Safeco either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

59. As a direct and proximate result of Safeco's breach of its duty of good faith and fair dealing, Ms. Reith has sustained damages in an amount to be proved at the time of trial.

**WHEREFORE**, Plaintiff prays for a judgment in her favor and against Defendant for recovery of all compensatory damages to be proved at trial, including but not limited to actual damages; bad faith breach of insurance contract damages and breach of Colorado statutory law; double her actual damages for repair, mediation, and renovation of water and mold damage and asbestos removal under the homeowner's policy issued by Safeco, for her costs; expert witness fees; attorneys' fees, and pre- and post-judgment interest as provided by Colorado law and specifically under C.R.S. §§ 10-3-1115 and 1116; and for such other and further relief as the Court determines equitable and just, all in an amount to be determined by a jury.

## JURY DEMAND

Plaintiff hereby demands a jury of six persons of all issues so triable and submits the required jury fees with the Complaint.

Dated this 26th day of January, 2018.

CANNON HADFIELD STIEBEN & DOUTT, LLC

*s/Shannon B. Sharrock*
Shannon B. Sharrock
3534 JFK Pkwy. #B
Fort Collins, CO 80525
Telephone: (970) 689-3037
Fax: +1 (970) 360-1004


Plaintiff's Address:
1600 Abilene Drive, Broomfield, CO 80020